UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SUSANNA DATRES,

    Plaintiff,

    -v-

ARISKNIGHT WINFREE, LISAUREL WINFREE,
JEAN WINFREE, DAVID WINFREE,
MULTIKULTUR E.K., AGENT AU PAIR, INC.,
and RAFAEL BUJARA,

    Defendants.
_____/

Case No. 1:23-cv-0519 HYJ-SJB

Frederick M. Baker, Jr. (P25415)
Frederick M. Baker, Jr. PLLC
200 N. Washington Square, Ste 400
Lansing, Michigan 48933
(517) 318-6190 or 881-2726
fmbjrpllc@outlook.com

Alastar S. Mc.Grath
KOZACKY WEITZEL MCGRATH P.C.
Counsel for Defendant Au Pair
400 Renaissance Ctr, Ste 2600
Detroit, MI 48243-1502
(312) 696-0900
amcgrath@kwmlawyers.com

MELCHIONNA, PLLC
Co-Counsel for Plaintiff
437 Madison Ave, 24th Fl.
New York, NY 10022
(646) 595-8230
lcmm@malchionnalaw.com

Scott W. Kraemer
Kuiper Kraemer, P.C.
Co-Counsel for Plaintiff
180 Monroe Ave, N.W., Ste 400
Grand Rapids, MI 49503
(616) 454-3700
Kraemer@k2legal.com

**MOTION FOR SUMMARY JUDGMENT**
**OF**
**DEFENDANTS JEAN WINFREE AND LISAUREL WINFREE**

**AND**

**SUPPORTING BRIEF**
**WITH**
**CERTIFICATE OF COMPLIANCE**

<u>**ORAL ARGUMENT REQUESTED**</u>

## MOTION FOR SUMMARY JUDGMENT
## OF
## DEFENDANTS JEAN WINFREE AND LISAUREL WINFREE

Supporting their motions by their declarations and the exhibits attached to them, **Exhibits 1 and 2**, Defendants Jean Winfree and LisAurel Winfree (collectively for purposes of this motion "Defendants") move, pursuant to F.R. Civ. P. 56(a),[1] (c)(1) to (4),[2] and (d),[3] and W.D. Mich. L. Civ. R. 7.2, for summary judgment in their favor on the claims asserted against them in Count VI, and (misnumbered) Counts VI, VII, and VIII[4] of Plaintiff's First Amended Complaint, **Exhibit 3**,

---

[1] "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

[2] (c) Procedures.

(1) *Supporting Factual Positions.* A party *asserting that a fact cannot be* or is *genuinely disputed* must support the assertion by:

(A) *citing to particular parts of materials in the record, including* depositions, documents, electronically stored information, *affidavits or declarations*, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) *showing that* the materials cited do not establish the absence or presence of a genuine dispute, or that *an adverse party cannot produce admissible evidence to support the fact.*

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.*

[3] (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

(Emphasis added)

For reasons shown in the argument that follows, Plaintiff cannot rely on the provisions of Rule 56(d) to argue that decision ought to be deferred: No possibility exists that factual developments or discovery will lead to facts that can sustain Plaintiff's claims against Defendants, because they are based on lies that Defendant Arisknight Winfree told to induce Plaintiff to come to America and to his home, where he, and he alone, committed the acts of which Plaintiff complains.

[4] These counts are labeled, respectively: VI (Gross Negligence), VI (sic) (Negligence), VII (Intentional Infliction of Emotional Distress), and VIII (Conspiracy to Commit Unlawful Acts).

2

Record, ECF No. 6,[5] on the ground that no genuine dispute exists as to any material issue of fact, and they are therefore entitled to judgment as a matter of law.

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF MATERIAL FACTS

For purposes of this motion, the material facts are (1) those alleged in the First Amended Complaint, **Exhibit 3**, and (2) **Exhibits 1** and **2**, Defendants' declarations in support of their motion.

Summarized, the First Amended Complaint alleges in paragraphs 1 through 6 that Defendant ArisKnight Winfree used the services of an international au pair[6] placement agency to lure the Plaintiff from her home in Italy to the United States, and ultimately to his East Lansing home, for the purpose of committing a series of grotesque and perverted sexual assaults upon her.[7]

To accomplish this, Defendant ArisKnight Winfree posed as the uncle of a "toddler" in need of au pair care. Supposedly the toddler was his niece, the daughter of his sister, Defendant LisAurel Winfree. Ostensibly the toddler and LisAurel lived with him in what he described in the position posting as the Winfree family home, located at 343 Highland Ave in East Lansing, Michigan. Defendant ArisKnight Winfree allegedly included in the position posting on Agent

---

[4] To the extent they are incorporated in and repeated verbatim in the Counts specifically directed to Defendants, this motion is directed, as well, to Counts I through V, which, though nominated as being directed against Defendant ArisKnight, must also be regarded as being asserted against Defendants on some inchoate and unarticulated theory of "agency" or, perhaps, "conspiracy," as they are incorporated by reference in Counts IV, IV (sic), VII, and VIII. These counts, too, are unsustainable as a matter of law, because, as applied to Defendants, they are based upon the same false factual predicates that require summary judgment for Defendants on the Counts specifically directed to them.

[5] For the Court's convenience, a copy of the First Amended Complaint is attached as **Exhibit 3**.

[6] Defendant Agent Au Pair, Inc. The term used to describe this child care occupation comes from a "French term au pair, meaning 'at par' or 'equal to', indicating that the relationship is intended to be one of equals: the au pair is intended to become a member of the family, albeit a temporary one, rather than a traditional domestic worker." See Wikipedia: https://en.wikipedia.org/wiki/Au_pair#:~:text=The%20title%20comes%20from%20the,than%20a%20traditional%20 0domestic%20worker.

[7] Additional grisly details of the sexual assaults ArisKnight allegedly committed are to be found in the explicit allegations of paragraphs 34 through 49 of the First Amended Complaint.

AuPair's website photos purporting to depict the "toddler" and the Winfree Family home and its lakefront cottage.

Though neither the toddler nor the lakefront cottage exists, and though the property at 343 Highland Ave was his exclusively ArisKnight's home, not the Winfree family home, Plaintiff baselessly alleges that Defendants supplied these photos to ArisKnight for posting on the defendant placement agency's website. Allegedly these photos enabled ArisKnight to create the reassuring image of a family of means who needed the services of an au pair to care for the toddler child of his sister LisAurel.

Once Plaintiff arrived at his East Lansing home, ArisKnight brutally and repeatedly raped and sexually abused Plaintiff, stole her money and possessions, and then abandoned her, penniless and stranded in a foreign country.

Fortunately, Plaintiff was able to contact her parents in Italy, who arranged for her passage home. After investigation, both state and, later, federal authorities charged ArisKnight with state federal crimes, for the latter of which he is now being prosecuted by the U.S. Attorney for the Western District. **Exhibit 3**, First Amended Complaint, ECF 6, ¶¶ 51 through 53.

In addition to naming as defendants ArisKnight and the corporate entities that provided the international au pair placement services that enabled him to secure his victim's placement in and delivery to his East Lansing home to be raped, Plaintiff has also chosen to name as Defendants members of Defendant ArisKnight's family, his father David, his mother Jean, and his sister LisAurel. Plaintiff does so on the theory that these Winfree family members allegedly assisted Arisknight to carry out his dastardly scheme by empowering him to act as their agent in securing childcare for his sister LisAurel's "toddler" chld, providing him with unsupervised access to the

4

"family home," and allegedly "conspiring" with Arisknight to assist him in carrying out his criminal scheme.

Thus, Plaintiff alleges in the First Amended Complaint that "[ArisKnight} posted an aupair [sic] job position on the [www.aupair.com] platform, purportedly as <u>an American family named AK based in East Lansing, Michigan</u>," and that "after an introductory video call, defendant [Arisknight] invited plaintiff to travel to Michigan and <u>stay with the family</u> to purportedly <u>babysit defendant [ArisKnight's] niece</u>, who is <u>Defendant [LisAurel Winfree's] daughter</u>." **Exhibit 3**, First Amended Complaint, ECF 6, ¶ 3.

The claims alleged in the First Amended Complaint directed against Defendants are set forth in Count VI, p. 16 (Gross Negligence); and the misnumbered Counts VI p. 19 (Negligence); VII, p 21 (Intentional Infliction of Emotional Distress); and VIII, p. 22 (Conspiracy to Commit Unlawful Acts). Each of the claims alleged in the misnumbered successive Counts VI, VII, and VIII incorporates and realleges the allegations of paragraphs 90 and 91, which contain the operative "facts" on which all four of Plaintiff's claims against Defendants are premised.

Paragraph 90 alleges that "Defendant AW [ArisKnight] could not design and execute the sexual assault and imprisonment plan against plaintiff without **[1]** <u>the material support of co-defendants Lis[A]urel Winfree ("defendant LW", Jean Winfree ("defendant JW")</u> and David Winfree ("defendant DW", and the three individuals all together as "co-defendants"). **[2]** <u>Defendant JW and defendant DW put at [Arisnight's] disposal the 343 Highland Avenue property to AW so that he could occupy and control the premises while pretending to be a "family" with a niece and commit criminal activity and tortious acts</u>. **[3]** <u>Defendant JW, Defendant DW and defendant LW provided family pictures and a toddler niece in need of babysitting to post on the Au Pair platform</u>. **[4]** <u>**Defendant AW acted as agent of co-defendants**</u>." (Emphasis added).

5

Thus, Plaintiff's claim against Defendants is explicitly premised on the following factual premises, each of which is undeniably false: (1) that LisAurel has a "toddler" daughter; (2) that LisAurel and her toddler resided at the 343 Highland Avenue "family home" in East Lansing; (3) that LisAurel empowered ArisKnight to act as her agent in securing au pair services for her toddler daughter; (4) that Jean and David Winfree resided at the "family home;" (5) that LisAurel, Jean, and David empowered David to occupy the "family home" for the purpose of committing his sexual assaults on Plaintiff; (6) that Defendants actively assisted ArisKnight to carry out his scheme by providing photos of the toddler and the family home and beach house to use on the au pair website; and, (7) most outrageously, (in Count VIII) that Defendants actively agreed, conspired with, and assisted ArisKnight in carrying out his sick scheme.

Paragraph 91 alleges that "On October 12, 2022, defendant DW [David Winfree"][8] met with the plaintiff, the "au pair [sic] from Italy," who travelled from overseas to babysit defendant LW's daughter for three months while living on his property at 343 Highland Avenue (the "premises")."

Paragraphs 90 and 91 contain the entire chimeric factual foundation of demonstrable falsehoods on which Plaintiff's claims against Defendants rest.

In fact, the First Amended Complaint is internally inconsistent with this factual theory. <u>Plaintiff correctly alleges that LisAurel is a resident of Ann Arbor.</u> **Exhibit 3**, First Amended Complaint, ECF 6, ¶ 10. LisAurel has never resided in East Lansing and, indeed, had never been

---

[8] The undersigned does not (at this time) represent David Winfree but includes the allegations against him here because they starkly illustrate <u>the complete and utter lack of care taken by Plaintiff's counsel to separate Arisknight's lies from the actual facts, in violation of their duties under Rule 11</u>.
**David Winfree has resided in Florida since 2016, where he moved before his 2017 divorce from Jean Winfree became final, and he has not visited Michigan since November 2021. He has no interest whatsoever in the 443 Highland Avenue property and has never resided there.** See **Exhibit 2**, LisAurel Winfree Declaration,

to ArisKnight's East Lansing home until after ArisKnight's arrest. **Exhibit 2**, LisAurel Winfree Declaration, ¶¶ 11, 12.

Moreover, though Plaintiff falsely alleges that Defendant Jean Winfree is a resident of East Lansing, **Exhibit 3**, First Amended Complaint, ECF 6, ¶ 11, Plaintiff's counsel well knew that Jean Winfree resided in Ann Arbor, which is where they sent the process server who falsely certified[9] that he had served Jean Winfree at her Ann Arbor residence! Jean Winfree has lived in Ann Arbor at that residence since 1997, **Exhibit 1**, Jean Winfree Declaration, ¶ 7). Yet, in a blatantly false effort to support the claim that Arisnight's house at 343 Highland Avenue in East Lansing was the Winfree "family home," the First Amended Complaint alleges falsely that Jean Winfree "is a resident of East Lansing, Ingham County, Michigan." This false allegation of Jean's residence was necessary for Plaintiff to assert that Jean Winfree "allowed" ArisKnight to use the "family home" to commit his sexual assaults on Plaintiff.

In fact, however, neither Jean Winfree nor LisAurel Winfree had ever even seen or been inside the East Lansing residence until after ArisKnight was arrested in December 2022. See **Exhibit 1**, Jean Winfree Declaration, ¶¶ 9-10, 26; **Exhibit 2**, LisAurel Winfree Declaration ¶¶ 13-14, 26. Jean Winfree's only connection to the East Lansing premises was the assistance she gave to her son, Defendant ArisKnight, in obtaining financing for its purchase when he moved to East Lansing to be closer to his employment. **Exhibit 1,** Jean Winfree Declaration, ¶¶ 13-17.

---

[9]     Shockingly, Plaintiff's process server swore that Jean Winfree was a "a **black-haired white male, 45-55 years of age, 5'8" to 5'10" tall and weighing 160-180 lbs**." See **Exhibit C** to JW Declaration, ECF 19.
     As **Exhibit B** to the JW Declaration confirms, Ms. Jean Winfree in fact is an **Asian woman, 5' 4" tall, in her 60s, who weighs less than 130 lbs**. **Exhibit 1**, ¶ 29.
     Jean Winfree was never served. *Id.*
     When confronted with the obvious falsity of the proof of service, counsel for Plaintiff stipulated to set aside the defaults wrongly entered against her. ECF 37, Stipulation to Set Aside Defaults.
     Likewise, LisAurel, who also was never served, was similarly misdescribed in a false Proof of Service as a "black haired, **white female 45-55 years of age**," when in fact **she is a half-Asian female 33 years of age**. See ECF 20, Proof of Service, and **Exhibit 2**, LisAurel Winfree Declaration, ¶¶ 1, 36, and Exhibit A (photograph).

ArisKnight was the sole occupant of the 343 Highland Avenue premises and exercised sole possession and control of the property. *Id.* <u>No other member of the Winfree family ever entered it, resided there, or, indeed, had ever visited it in the brief time between its purchase in July 2022 and the events of October 2022 that led to ArisKnight's arrest.</u> *Id.*; **Exhibit 2,** LisAurel Winfree Declaration ¶¶ 13-16, 26(A), (D), and (F).

But, comparatively speaking, the falsity of Plaintiff's allegations portraying the 343 Highland Avenue property as the Winfree "family home" is much less damning than the incontrovertible falsity of the allegations on which Plaintiff's claims against Jean and LisAurel are truly bottomed, that is, that Defendants, as a "family" residing at the 343 Highland Avenue residence, and LisAurel, as the mother of the "niece" for whom Plaintiff was supposedly going to provide care, cloaked ArisKnight with agency to act on their behalf to procure Plaintiff's services to care for a non-existent "toddler!"

The entire theory of Plaintiff's case utterly evaporates when – as Plaintiff's counsel could have determined had they performed the reasonable investigation required under Rule 11 – it is revealed that **LisAurel has no daughter, and ArisKnight had no niece**. Not only did neither LisAurel nor Jean reside in the supposed "family home" in East Lansing, not only had neither ever seen or entered it before ArisKnight allegedly committed his unspeakable crime, **but no toddler ever existed -- LisAurel has never had a child**! See **Exhibit 1,** Jean Winfree Declaration, ¶¶ 21, 22, 26 (C)- (F); **Exhibit 2,** LisAurel Winfree Declaration ¶¶ 20-22, 26(B) – (E).

In short, the entire theory of Plaintiff's claims against Defendants rests upon the same fictional factual premise that ArisKnight fabricated as a means of luring the Plaintiff to the United States, and to <u>his home</u> in East Lansing, so that he could sexually abuse her in the absolute and terrifying privacy of that home, over which he exercised sole control and possession.

There was no "toddler," there was no East Lansing "family home," Defendants provided no material assistance to Defendant ArisKnight, and they certainly conferred no "agency" upon him to act on their behalf to employ an au pair to care for a "toddler" who did not exist.

## SUMMARY JUDGMENT STANDARD

Recently, in *Ries v. McDonald's USA, LLC*,[10] this Court concisely stated the summary judgment standards applicable here:

> Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). **A fact is material if it "might affect the outcome of the suit."** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). **A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."** *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). **"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'"** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). When considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. (Bold emphases added).

## ARGUMENT

### Introduction

When this familiar summary judgment standard is applied to the <u>true</u> facts of this case, *and* when it is realized that Plaintiff cannot cure the factual and legal defects inherent

---

[10] No. 1:20-CV-2, 2021 WL 5768436, at *1 (W.D. Mich. Dec. 6, 2021) (Jarbou, J.). (Copy attached as **Exhibit 4**).

9

in the theory of her claims against Jean and LisAurel Winfree by engaging in "discovery," which would be akin to a search for a pony in a pile of horse manure, Defendants plainly are entitled to summary judgment. Indeed, it is evident that once summary judgment has been entered on the claims against Defendants, a hearing on whether Rule 11 sanctions are required will be in order.[11]

Plaintiff's claims against Jean and LisAurel Winfree are based upon the same falsehoods and deceptions that Defendant ArisKnight employed to persuade his victim to travel to the U.S., come to his home to assume a position as an au pair caring for a fictional "niece," and to reside with a "family" that consisted of no one but ArisKnight Winfree.

It is ironic that, though Plaintiff's New York and Grand Rapids attorneys are plainly capable attorneys, *in fashioning their claims against Defendants, they inexplicably chose to rely uncritically upon, without investigation or inquiry, and assert as truth, the same tissue of lies that ArisKnight used to lure Plaintiff into his clutches.* They did so even though, if their claim that Defendants agreed and conspired to assist ArisKnight to commit the crimes described in the First Amended complaint were true, such conduct obviously would have rendered Defendants criminally liable. Yet Plaintiff's counsel are plainly aware that the criminal charges they described in the First Amended complaint, **Exhibit 3**, ECF 6, ¶¶ 51- 54, were brought only against ArisKnight.

---

[11] Fed. R. Civ. Pro. 11(c)(2) provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

As the following argument and the Declarations of Jean and LisAurel Winfree demonstrate, Plaintiffs claims against them are legally insupportable because the factual predicates for the "duties" Defendants supposedly breached simply do not exist: Neither Jean nor LisAurel (and certainly not David, who has resided in Florida since 2016) resided with Arisknight at the ostensible "family home" at 343 Highland Ave in East Lansing that he exclusively occupied and controlled. ArisKnight's portrayal of his East Lansing property to Plaintiff as a "family home," his fabrication of the fictional niece who was supposedly his sister LisAurel's daughter, and his claim that he supposedly needed an au pair to care for this non-existent niece – all were purely and solely the inventions of ArisKnight's twisted, criminal imagination.

The photographs of the "toddler," the "beach house," and the "family home" that ArisKnight posted on the au pair website to create the illusion of normalcy and family life that he used to lure Plaintiff to his East Lansing residence to be sexually victimized were entirely Arisknight's fabrication, not "material assistance" provided to him by Defendants.

No beach house exists.

No niece exists.

No Winfree family members resided at the so-called "family home" in East Lansing.

And no Winfree family members assisted Arisnight in carrying out his criminal scheme.

The claims against Defendants never should have been filed. Had Plaintiff's counsel exercised even a modicum of prudence and investigated before filing the claims against Defendants they would have learned that all that they have alleged was the product of Arisknight's criminal imagination.

Unfortunately, Plaintiff's counsel appears to have been inexcusably credulous and incautious in leveling allegations against Defendants that they "entered "into an agreement" with

11

ArisKnight, "conspired" with ArisKnight, and "committed material acts in furtherance of the conspiratorial agreement" to enable ArisKnight to enable him to carry out his sexually predatory scheme. First Amended complaint, ECF 6, Count VIII ("Conspiracy") and ¶¶ 112-114.

Far from performing the "reasonable inquiry under the circumstances" their signatures on the First Amended Complaint certified they undertook before filing it,[12] Plaintiff's counsel actually relied upon ArisKnight's lies to fashion their claims against Defendants! They relied upon the same lies that ArisKnight used to lure their client to the sexual torture chamber he prepared for her, despite the absence of any allegation that Plaintiff ever saw or claimed to have seen the "toddler," Jean, or LisAurel, and despite the absence of any evidence whatsoever of their involvement in AriKnight's dastardly scheme.

Plaintiff and her counsel blithely alleged that Defendants put the nonexistent "toddler" at ArisKnight's disposal to assist him in carrying out his scheme without ever bothering to investigate whether such a child even existed. Similarly, they alleged that Defendants provided ArisKnight with photographs of a toddler who did not exist. And they compounded their gross failure to perform even the minimal inquiry that would be reasonable under the circumstances before levelling such serious charges of criminality against Defendants by heaping atop these false

---

[12] Fed. R. Civ. Pro. 11(b) ("Representations to the Court") pertinently provides:

<u>By presenting to the court a pleading</u>, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—<u>an attorney</u> or unrepresented party <u>certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances</u>:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) <u>the factual contentions have evidentiary support</u> or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; ... (Emphasis added).

allegations the baseless claim that Defendants acted in furtherance of an "agreement" to help ArisKnight lure Plaintiff to East Lansing to be raped repeatedly by their son and brother.

Such grossly reckless claims are unworthy of anyone licensed to practice before this Court and subject to the requirements of Rule 11.

One is reminded of Mark Twain's famous letter to the gas company:[13]  Do Plaintiff's multiple counsel not have a telephone?  Did it never occur to them that such a scenario cried out for at least some minimal investigation before asserting such a monstrous and factually insupportable claim?

Defendants are entitled to summary judgment as a matter of law.

### THERE IS NO GENUINE DISPUTE AS TO ANY FACT MATERIAL TO PLAINTIFF'S CLAIMS AGAINST DEFENDANTS AND THEY ARE THEREFORE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR.

Plaintiff's claims rest at their core on the allegations of paragraphs 90 and 91 of Count VI, which are incorporated in each of the 4 counts of the First Amended Complaint directed to Defendants.  Each succeeding claim alleged the facts alleged in ¶¶ 90 and 91 of Count VI, because they are incorporated and realleged as the basis for the claims asserted in the misnumbered Counts VI, VII, and VIII.

---

[13] **To the Gas Company**
Hartford, February 12, 1981

Dear Sirs:
Some day you will move me almost to the verge of irritation by your chuckle-headed G-------d fashion of shutting your G-------d gas off without giving any notice to your parishioners.  Several times you have come within an ace of smothering half this household in their beds and blowing up the other half by this idiotic, not to say criminal, custom of yours.  And it has happened again today.  Haven't you a telephone?
\Ys
SL Clemens (Mark Twain)

https://bfederman.com/2009/03/09/mark-twain/

Paragraph 90 alleges that "Defendant **AW [ArisKnight] could not design and execute the sexual assault and imprisonment plan against plaintiff without the material support of co-defendants Lis[A]urel Winfree ("defendant LW", Jean Winfree ("defendant JW") and David Winfree ("defendant DW")** and the three individuals all together as "co-defendants"). Defendant **JW and defendant DW put at disposal the 343 Highland Avenue property to AW** so that he could **occupy and control the premises while pretending to be a "family" with a niece** and commit criminal activity and tortious acts. Defendant JW, Defendant DW and defendant LW **provided family pictures** and **a toddler niece in need of babysitting** to post on the Au Pair platform. **Defendant AW acted as agent of co-defendants.**"

This is the entire, pathetic factual "theory" Plaintiff plead against Defendants.

As the Declarations of both Jean and LisAurel establish, however, neither Defendant had nor exercised any control over, never occupied, and, indeed, had never even entered the premises at 343 Highland Avenue prior to Defendant AW's arrest. Defendant ArisKnight had sole control over and occupancy of the premises at 343 Highland Avenue under his agreement with his mother at the time he closed on the purchase of the house. Jean's sole connection to the East Lansing property was the assistance she gave her son in July 2022 to secure mortgage financing.

No "niece" ever existed, so neither Defendant had any reason to suppose, and certainly had no knowledge, that their (son and brother) would seek or had sought the services of an au pair to care for a nonexistent niece.

As noted in the Statement of Facts, both Defendants affirm that they provided no photos, family pictures, or photos of a toddler niece for ArisKnight to post on the Defendant Agent Au Pair, Inc.'s platform in seeking the services of Plaintiff or any other person, for a very simple

14

reason: "No one in our family has a beach house, and no such toddler existed." **Exhibit 1**, Jean Winfree Declaration, ¶ 26 (C); **Exhibit 2**, LisAurel Winfree Declaration, ¶ 26 (C).

Similarly, the core allegation of paragraph 91 that "On October 12, 2022, defendant DW [David Winfree"] met with the plaintiff, the "aupair [sic] from Italy," who travelled from overseas to babysit defendant LW's daughter for three months while living on his property at 343 Highland Avenue (the "premises")" reflects at least three layers of factual error that cannot be remedied by amendment or corrected by discovery.

Certainly, if Plaintiff met someone that ArisKnight introduced as his "dad," it was not David Winfree (DW). As both Jean and LisAurel aver in their declarations, David Winfree moved away from the State of Michigan in 2016, before his divorce from Jean became final in 2017, and he had no interest in or involvement in the purchase of the premises at 343 Highland Avenue. **Exhibit** 1, Jean Winfree Declaration, ¶¶ 12, 26, 27, 31; **Exhibit** 2, LisAurel Winfree Declaration, ¶¶ 16, 26, 27, 30.

Counsel for Plaintiff could have learned that the foregoing controverted facts alleged in the First Amended Complaint were untrue through reasonable inquiry under the circumstances before filing the groundless claims against Defendants asserted in the First Amended Complaint. It seems, moreover, that Plaintiff and her counsel twisted the facts to suit them, alleging in both the original Complaint and the First Amended Complaint, ECF 1, ¶ 4, and ECF 6, ¶ 11, that Jean Winfree resided in East Lansing, but then dispatching a process server to serve her at her home (since 1997) on Vorhies Road, in Ann Arbor.

Though it was falsified, the Proof of Service Plaintiff filed with this Court, ECF 19, reflects service on Jean at the Ann Arbor address! Plaintiff's counsel well knew that Jean did not reside in East Lansing, as both the original and the First Amend Complaint falsely alleged, because they

15

arranged for Jean to be served in Ann Arbor and filed default against her based on the falsified proof of service on her at that address.

Here, as in *Ries v. McDonald's USA, LLC, supra, n9,* in which summary judgment was proper because "there [was] no genuine dispute that the defendant was not the Plaintiffs' actual employer," there neither is, nor can there be, any genuine dispute that Defendants did not, as Plaintiff alleges, authorize or enable "Defendant AW [to] act[] as agent of co-defendants" for the purpose of securing an au pair to provide babysitting services at the "family home." This is so as a matter of both fact and the law of agency because there was no baby, and the 343 Highland Avenue property was not the "family home!"

ArisKnight merely fabricated these facts by posting false information on the Agent Au Pair, Inc. website to convey those impressions to prospective au pair candidates. Plaintiff's First Amended Complaint just as surely falsifies the facts by repeating, as if they were true, the factual fabrications ArisKnight used to lure his victim to **his** East Lansing home.

In determining whether summary judgment is proper, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Here, Defendants submit, the evidence is not merely one-sided, it is entirely opposed to Plaintiff's claims against them, and that defect in the proofs cannot be cured. Literally no evidence exists that Defendants conspired with ArisKnight to lure an au pair to East Lansing by providing him with a baby and allowing him to use the "family home" for that purpose, because (a) there was no baby, and (b) the home was solely and exclusively ArisKnight's. No amount of discovery is going to alter that fact that there was no niece, there was no beach house, and neither Jean nor

LisAurel ever resided in (or indeed, until after ArisKnight's arrest, ever even saw or entered) the East Lansing house that was at all pertinent times exclusively and solely ArisKnight's residence.

Plaintiff asserts claims for both "gross negligence" and "negligence" in the misnumbered Counts VI and VI [sic], but, as this Court observed recently in granting summary judgment in *Wenzel v. Tremonti*, in which the negligence claim was based on premises liability:[14]

> " 'To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages.' " *Laier v. Kitchen*, 702 N.W.2d 199, 210 (Mich. Ct. App. 2005) (quoting *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000)). "<u>A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm</u>." *Riddle*, 485 N.W.2d at 681. (Emphasis added).

Plaintiff simply cannot carry the burden of showing either the existence of a duty or any breach of duty based on premises liability or Defendants' relationship to the East Lansing property where the sexual assaults occurred, because (1) neither Jean nor LisAurel ever resided at, exercised any control over, or even entered the premises; (2) the premises were inhabited solely by Defendant ArisKnight, who had the sole right of possession of the premises and the sole responsibility for paying for and maintaining the property under the agreement with his mother (Jean) that was entered into at the July 2022 closing on the property; (3) the East Lansing property was never the "family home" that ArisKnight portrayed it to be when he lured Plaintiff to the premises to sexually assault her; and (4) the "niece" for whom he ostensibly sought au pair services not only never resided there, she never existed!

---

[14] No. 1:21-CV-908, 2022 WL 17687993, at *5–6 (W.D. Mich. Dec. 15, 2022) (Jarbou, J.)(Copy attached as **Exhibit 5**).

Accord *Lopez v. Foerster*, No. 1:18-CV-160, 2020 WL 6882903, at *2 (W.D. Mich. Nov. 24, 2020) (Jarbou, J.), *aff'd*, No. 20-2258, 2022 WL 910575 (6th Cir. Mar. 29, 2022) (Summary judgment proper; evidence was so one-sided that no genuine issue of fact existed when the allegations were insufficient to establish a pattern or practice)(Copy attached as **Exhibit 6**).

## CONCLUSION

The rules governing summary judgment are settled and well understood by the profession. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Without setting forth here every line of the declarations offered in support of this motion, and praying the Court's reference to them, in which both Jean and LisAurel are at pains to explain in detail why the factual premises of the Plaintiff's claims simply cannot be established, Defendants submit that it is clear beyond any doubt that summary judgment on the claims against them is proper because the facts alleged on which those claims are based are false, and no amount of discovery or amendment can render them true or the claims legally sound.

Plaintiffs cannot oppose this motion with unsworn allegations such as those contained in the First Amended Complaint,[15] nor can they offer this Court any reason to suppose that discovery will unearth facts that will somehow rehabilitate their claims, for the simple reason that their claims

---

[15] It is well established that unsworn factual allegations are not evidence that can be considered at summary judgment. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (holding that unsworn statement did not meet requirements of Rule 56); *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment[.]" (quoting *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir.1998))). The rule that unsworn allegations are not admissible at summary judgment is not intended to be "hyper[-]technical" or pointlessly formalistic; rather, it is "critical" to ensuring that parties are not "free to fabricate a genuine issue of material fact with no fear of recourse." *Rogers v. City of Selma*, 178 F. Supp. 3d 1222, 1233 (S.D. Ala. 2016).

are based on the very lies and misrepresentations that ArisKnight used to inveigle the Plaintiff to come to his house of horrors.

As the Court observed in *Celotex Corp v Catrett*[16]

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).

When, as the declarations supporting this motion and the foregoing argument establish here, both discovery and amendment would be futile because Plaintiff's claims are premised upon a demonstrably and irreparably untrue version of the facts, summary judgment is the proper remedy. *In re Aredia & Zometa Prod. Liab. Litig.*, 352 F. App'x 994, 995 (6th Cir. 2009) (Court does not abuse its discretion in denying a request for additional discovery after summary judgment, "if further discovery cannot remedy legal or factual deficiencies in the movant's claims or defenses. *CenTra, Inc. v. Estrin,* 538 F.3d 402, 420 (6th Cir.2008).").

## RELIEF

For the foregoing reasons, Defendants Jean Winfree and LisAurel Winfree ask that this Court enter Summary Judgment in their favor on all of Plaintiff's claims against them and award them their costs and such other relief as the Court may deem proper.

Further, Defendants wish to reserve their right to seek in a separate motion any remedy that may be available to them under Rule 11, as the Court may deem proper after hearing.

---

[16]    477 U.S. 317, 327 (1986).


Respectfully submitted,

/s/ *[signature]*
Frederick M. Baker, Jr. (P25415)
Frederick M. Baker, Jr PLLC
200 N. Washington Square, Ste 400
Lansing, Michigan 48933
(517) 318-6190 or 881-2726

Dated: September 25, 2023

## CERTIFICATE OF COMPLIANCE PURSUANT TO WD MICH L Civ R 7.2(b)(i) and (ii)

Pursuant to Western District of Michigan Local Civil Rule 7.2 (b)(i) and (ii), the above-signed certifies that, according to the Microsoft Word for MAC, version 16.77.1, word-processing software used to create them, the foregoing document comprises 6607 words (*inclusive* of the caption, signature block, and this certification), and thus complies with the 10,800-word limit prescribed by Western District of Michigan Local Civil Rule 7.2(b)(i) for dispositive motions.