UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSANNA DATRES,

    Plaintiff,

v.

    Case No. 1:23-cv-519

    Hon. Hala Y. Jarbou

ARISKNIGHT WINFREE, et al.,

    Defendants.
_____/

## OPINION

On April 24, 2024, the Court issued an order granting in part and denying in part Plaintiff Susanna Datres's motion to amend the complaint (ECF No. 101). In that order, the Court denied a motion to dismiss by Defendants Multikultur E.K. ("Multikultur") and Rafael Bujara (collectively "Defendants" for the purpose of this motion) that it had previously stayed pending resolution of Datres's motion to amend. Defendants' motion to dismiss included, among other things, a request to dismiss under the doctrine of *forum non conveniens*.

Before the Court is Defendants' motion to reconsider the Court's denial of their motion to dismiss under *forum non conveniens* (ECF No. 109). Defendants argue that the Court inappropriately confined its analysis to the pleadings, as if the motion were solely a Rule 12(b)(6) motion. On May 22, 2024, the Court agreed to more fully consider Defendants' *forum non conveniens* arguments and to accept further evidence from both parties (ECF No. 111). It ordered Datres to respond to the merits of Defendants' argument, rather than to apply standards applicable to a motion to reconsider. All parties have now submitted their briefs and additional evidence.

As discussed in the Court's April 24, 2024 opinion, jurisdiction is proper over both the case and Defendants. (4/24/2024 Op. 6-12, ECF No. 100.) Datres's complaint includes a federal

question, and the Court can exercise its supplemental jurisdiction over the remaining claims. Also, Defendants have sufficient minimum contacts with the forum state to be subject to personal jurisdiction.

## I. BACKGROUND

The background of this case is discussed at length in the Court's April 24, 2024 opinion addressing Datres's motion to amend the complaint. To summarize, Datres alleges that she was lured to Michigan and then sexually assaulted by Defendant Arisknight Winfree, who was aided by Defendant Paul Heiselman. Datres, an Italian citizen, claims she met Winfree, a Michigan citizen, through the online au pair matching service, www.aupair.com ("aupair.com" or "the Website"). (2d Am. Compl. ¶¶ 2, 7, 8, 11, ECF No. 104.) The Website is owned and operated in some combination by Defendants—both German citizens—and Agent Au Pair Inc. (*Id.* ¶¶ 3, 17-18.)

Datres's claims against Defendants sound in tort—she claims negligence, gross negligence, and various forms of product liability. (*Id.* ¶¶ 167-210.) Defendants move to dismiss under the doctrine of *forum non conveniens*, arguing that their relationship with Datres is governed by terms of service ("TOS") that include a mandatory forum selection clause establishing exclusive jurisdiction in Cologne, Germany.

Section 8 of the TOS is titled "Deactivation, termination, or cancellation of use." (TOS § 8, ECF No. 58-2.) The combined choice of law and forum selection clause on which Defendants rely states: "The laws applicable are the laws of the Federal Republic of Germany and the applicable European Union Laws. The Court of jurisdiction is Cologne." (*Id.* § 8.9.)

Sections 8.6, 8.8, and 8.10 are also relevant. Section 8.6 provides that

> In case of any breach of the Terms and Conditions . . . or in case of any breach of rights, laws, or third party's rights enforceable in the Federal Republic of Germany, AuPair.com has the right to block the user at any time and without notice . . . and

2

> any payment previously made will be retained by AuPair.com as a conventional penalty for breach of contract.

(*Id.* ¶ 8.6.)  Section 8.8 specifies that "AuPair.com has the right to change the Terms and Conditions at any time and will inform the users through email." (*Id.* ¶ 8.8.)  And section 8.10 contains a savings clause: "If any provision of the contract is entirely or partially invalid, or should the contract contain a loophole, the validity of the remaining provisions or the remaining valid parts of the provisions are to be considered valid." (*Id.* ¶ 8.10.)

## II. LEGAL STANDARD

On a motion for reconsideration, "[t]he movant shall not only demonstrate a palpable defect by which the court and parties have been misled, but also show that a different disposition of the case must result from a correction thereof." W.D. Mich. LCivR 7.4(a).

## III. ANALYSIS

The Court agrees with Defendants that it should more fully analyze the motion to dismiss under *forum non conveniens* and that it should not confine its analysis to the pleadings.  Thus, the only question is whether Defendants can show that such analysis results in a different disposition.

The Court faces the threshold question of which *forum non conveniens* framework to apply—the traditional analysis or *Atlantic Marine's* modified analysis?  In the traditional analysis, a court evaluates both public and private interests to determine "whether, on balance, a transfer [or dismissal in favor of a foreign forum] would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013) (quoting 28 U.S.C. § 1404(a)) (alteration added to clarify its applicability to analyses involving foreign forums, *see id.* at 60-61).  The presence of a forum selection clause, however, changes this analysis.  A forum selection clause specifying a foreign forum precipitates two analytical adjustments: first, "the plaintiff's choice of forum merits no

weight"; second, a court "should not consider arguments about the parties' private interests[.]" *Id.* at 63-65.  Ultimately, "[t]he onus falls on the plaintiff to show that the public-interest factors defeat dismissal, and they rarely will."  *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F4th 209, 215 (6th Cir. 2021).

To determine whether *Atlantic Marine* applies, the Court must first determine "whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Id.* at 215 (6th Cir. 2021) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830, 833 (6th Cir. 2009)). If the forum selection clause meets each criterion, "*Atlantic Marine's* modified *forum-non-conveniens* analysis applies[.]"  *Id.* at 216.

**A. The Forum Selection Clause**

As an initial matter, Datres argues that the Court should apply federal common law to interpret the forum selection clause at issue.  Although Defendants do not challenge Datres on this point, she appears to be incorrect.  Until recently, the Sixth Circuit did interpret forum selection clauses according to federal common law.  *See Wong*, 589 F.3d at 828 (holding that the enforceability of a forum selection clause is governed by federal law).  However, it recently clarified that a federal court sitting in diversity "must use the *Erie* approach to contract interpretation to determine the [forum selection] clause's applicability under the appropriate law." *Firexo, Inc. v. Firexo Grp Ltd.*, 99 F.4th 304, 326 (6th Cir. 2024).  Here, Datres asserts state law claims against Defendants, and "[a] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."  *German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 3d 948, 955 (W.D. Mich. 2007) (collecting cases).  Accordingly, Michigan law appears to govern.

Regardless, the parties do not identify any differences that would arise from the choice between federal or Michigan law, nor can the Court discern any such differences.  Federal common

4

law requires forum selection clauses to be interpreted by reference to ordinary contract principles. *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892-93 (6th Cir. 1990).  Courts in Michigan also apply "ordinary contract principles," including the need to "first look to a contract's plain language." *Singer v. Am. States Ins.*, 631 N.W.2d 34, 40 n.8 (Mich. Ct. App. 2001).  If the plain language is clear, "there is only one meaning the parties could reasonably expect to apply." *Id.*  If the language is ambiguous, "longstanding principles of contract law require that the ambiguous provision be construed against the drafter." *Id.*  Whether the Court applies federal common law or Michigan law, its analysis is based on ordinary contract principles.

The parties focus much of their efforts on the validity and enforceability of the forum selection clause, but the Court finds the dispositive questions to be whether the clause is applicable to the claims at issue and whether it is mandatory.  These two questions can be distilled into one—did the parties agree *ex ante* to litigate Datres's negligence and product liability claims exclusively in Cologne, Germany?  The Court concludes that they did not.

First, the plain language of the clause neither clearly applies to Datres's claims nor clearly fixes an exclusive jurisdiction.  Again, the clause states in full, "The laws applicable are the laws of the Federal Republic of Germany and the applicable European Union Laws.  The Court of jurisdiction is Cologne."  (TOS § 8.9.)  The clause indicates what law to apply, but it fails to specify the object of that law.  In other words, what do the German and European Laws apply *to*?

Defendants point to *Wieland Copper Products, LLC v. Actian Corp.*, No. 3:21-cv-755-CHB, 2022 WL 18638816 (W.D. Ky. May 4, 2022), to argue that when a claim "arises under" a contract, a forum selection clause within that contract covers the claim in question.  But this argument merely begs the question. The Court in *Wieland* grappled with whether the plaintiff's copyright claims "arose under" a licensing agreement which contained a forum selection clause.

5

*Id.* at *5-6. But critically, the applicable forum selection clause covered "*any claims arising under this Agreement*[.]" *Id.* at *2. This contract language paved the way for the court's analysis—the clause selected a forum *for any claims arising under the agreement*. All the court had to do was determine if the plaintiff's claims did indeed "arise under" the agreement. Other courts assessing the applicability of a forum selection clause enjoyed similar guidance. *See, e.g.*, *Atlantic Marine*, 571 U.S. at 53 ("This subcontract included a forum-selection clause, which stated that all disputes between the parties 'shall be litigated . . .'"); *Lakeside Surfaces*, 16 F.4th at 209 (interpreting a clause applying to "[a]ny proceeding involving this Agreement and/or any claims or disputes relating to the agreements and transactions between the parties"); *Wong*, 589 F.3d at 825 ("The Terms and Conditions also provide that the agreement shall be governed by the laws of Gibraltar and any disputes shall be subject to the exclusive jurisdiction of the courts of Gibraltar[.]"); *Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 505 (N.D. Ohio 2022) (interpreting a clause covering "[a]ny dispute or claims relating in any way to your use of any Amazon Service").

This Court lacks such guidance. Defendants argue that Datres's claims "arise from her utilization of www.AuPair.com, and its consented-to Terms and Conditions[.]" (Defs.' Mot. to Dismiss, 13, ECF No. 54.) But this matters little without a choice of law or forum selection clause specifying its application to "all claims arising under" the TOS. The plain language of the clause leaves ambiguous the threshold question—to what do the German and European Union laws apply? To answer that question, Defendants essentially ask the Court to read in the phrase "all claims arising under the TOS." The Court declines to do so.

Second, while the plain language of the clause itself is ambiguous, the section of the TOS that contains the clause provides some clarity which cuts against Defendants' argument. "[C]ontractual terms must be construed in context, *Vushaj v. Farm Bureau Gen. Ins. Co. of Mich.*,

6

[773 N.W.2d 758, 760 (Mich. Ct. App. 2009)], and read in light of the contract as a whole, [*Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992)]." *Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 540 (Mich. Ct. App. 2015). The applicable section is titled "Deactivation, termination or cancellation of use[.]" (TOS § 8). The title of the section matches its content. Sections 8.1 through 8.7 explain what rights each party has in the event either party seeks to deactivate or delete an account. For instance, "[t]he account of each registered user may be deactivated at any time" (*id.* § 8.1) while "[t]he account of each user may be deleted *by the user* at any time" (*Id.* § 8.2 (emphasis added).) A user can "cancel the account without specifying any reason[,]" but if a user "cancels the Premium Membership and demands a refund . . . the cancellation notice must be submitted in writing within 14 days after the start date of the Premium Membership." (*Id.* § 8.3.) Sections 8.6 through 8.8 specify the Website's right to block or delete a user who has been found to violate either the TOS or applicable laws (*id.* §§ 8.6-8.7) and its right to change the TOS at any time (*id.* § 8.8). Section 8.9, of course, is the combined choice of law and forum selection clause. (*Id.* § 8.9.)

In this context, section 8 is quite narrow. Its provisions define the rights of the parties when one party seeks to discontinue service. Should disputes over discontinued service arise—say, when a user seeks a refund which the Website refuses to honor, or when a user disagrees with the Website's decision to terminate his or her account for breach of the TOS—section 8.9 directs a tribunal to apply German or European Laws. Thus, while the language of the forum selection clause is ambiguous, the section that contains it provides the context—section 8.9 applies to disputes involving the "deactivation, termination, or cancelation of use." Enlarging section 8.9 to cover all disputes relating to the contractual relationship between Datres and Defendants is unsupported by the text of the clause, the context of the clause, and "longstanding principles of

7

contract law requir[ing] that the ambiguous provision be construed against the drafter." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 787 (Mich. 2003) (citing *Singer*, 631 N.W.2d at 39 n.8).

Because the Court concludes that the forum selection clause is not applicable to the claims at issue, it need not analyze whether the clause is mandatory, valid, or enforceable. *Lakeside Surfaces*, 16 F.4th at 216 ("an answer of 'no' to any of [the requirements] means the traditional forum-non-conveniens analysis applies instead"). However, the Court notes that whether the clause is mandatory is also ambiguous.

Michigan courts "consider[] the question of whether a forum selection clause is 'permissive or mandatory'" by "examin[ing] the language of the clause for words of exclusivity." *Barshaw v. Allegheny Performance Plastics, LLC*, 965 N.W.2d 729, 739 (Mich. Ct. App. 2020) (internal quotations omitted). Such language must be "mandating," as in the word "shall." *Id.* ("the choice-of-law provision employs the word 'shall,' evidencing that the parties understood how to use mandating language"). Without similar mandating language, "the clause will be considered permissive." *Id.* At bottom, a court must be able to "infer from the language of the clause that the parties agreed" that the identified forum "would be the sole forum in which they could litigate disputes to the exclusion of all other forums." *Id.* Federal courts in the Sixth Circuit use a similar approach and look for the same type of mandating language. *See Advanced Critical Devices, Inc. v. Bos. Sci. Corp.*, No. 1:21-cv-02227, 2022 WL 1266117, at *5 (N.D. Ohio Apr. 28, 2022) (citing *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994), and collecting cases).

Defendants argue that the forum selection clause's use of "the" and "is," as in "*the* Court of jurisdiction *is* Cologne," is clearly mandatory. The Court disagrees. Both Michigan courts and federal courts in the Sixth Circuit focus on "words like 'shall' and 'exclusive'" to "indicate a

8

mandatory, rather than permissive, forum-selection clause." *Id.* (citing *Gen. Elec. Co.*, 29 F.3d at 1099); *see also Barshaw*, 965 N.W.2d at 738-40 (collecting cases). The clause lacks such language here. There is no "shall," or "exclusive," or "only." And while the clause may also lack clear terms of permission, the default rule in the face of ambiguity is to construe the clause as permissive. In other words, because the Court cannot infer from the language of the clause that the parties agreed to Cologne, Germany as the *sole* forum, the Court *cannot* construe the clause as excluding all other forums. At best, the Court can only infer that the parties consented to personal jurisdiction in Cologne, Germany. *See Barshaw*, 965 N.W.2d 729 (finding permissive a forum selection clause which contained "nothing . . . evidencing an intent by the parties to forgo the personal jurisdiction of all forums other than those within the [stated forum]").

Defendants cite a single out-of-state, out-of-circuit case to support their position that the terms "the" and "is" are sufficiently mandatory. In *Intermetals Corp. v. Hanover International Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454 (D.N.J. 2001), the court concluded that the phrase "'*The* court of jurisdiction . . . *is to be at* the place' is a clear indication that the drafter intended for the clause to be exclusive." *Id.* at 461. This Court is not persuaded. Courts in Michigan default to permissive clauses in the absence of clear mandating language and also construe ambiguity against the drafter. Again, without such clear mandating language, the clause is at best ambiguous and should be construed against both exclusivity and Defendants.

The Court returns to the simplified question it asked at the outset—did the parties agree *ex ante* to litigate Datres's negligence and product liability claims exclusively in Cologne, Germany? The Court concludes they did not. The forum selection clause is neither applicable to Datres's claims nor mandatory.

### B. Standard *Forum Non Conveniens* Analysis

Because the forum selection clause is neither applicable nor mandatory, *Atlantic Marine's* modified analysis does not apply. Instead, the Court will apply the traditional *forum non conveniens* analysis. The analysis involves three steps. "After the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Hefferan v. Ethicon Endo-Surgery Inc.,* 828 F.3d 488, 492 (6th Cir. 2016).

#### 1. Deference to Datres's Chosen Forum

Generally, "[w]hen a domestic plaintiff initiates a suit in his home forum, that choice is normally entitled to great deference because it is presumptively convenient for the plaintiff." *Id.* at 493. "In contrast, a foreign plaintiff's forum choice is usually accorded less deference because the assumption of convenience is 'much less reasonable.'" *Id.* But there are no "*per se* rules in applying the doctrine"; each case "turns on its facts[.]" *Id.* (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 455 (1994)). Indeed, a plaintiff's weak "or even nonexistent" ties to the United States "does not automatically mean that her choice of forum is owed little to no deference." *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619 (6th Cir. 2018). For instance, "a foreign plaintiff might logically believe that a U.S. forum is the most 'convenient' location in which to file her case if she doubts that any other court would be able to exercise jurisdiction over the defendant." *Id.*

Datres is not a domestic plaintiff initiating a suit in her home forum. Accordingly, her choice of Michigan enjoys less deference than it otherwise would if she were a citizen of Michigan. But those underlying presumptions center around a forum's convenience, and there is good reason to believe that Michigan is indeed the most convenient forum for Datres. The core injuries of

10

Datres's case took place in Michigan. At the time she filed her suit, a criminal case against Winfree for the underlying events was pending before this Court. Eventually, a separate criminal case against Paul Heiselman for his involvement was also filed with this Court. Winfree and Heiselman are both co-defendants with Multikulture and Bujara in the instant civil case. The Court thus has familiarity with this matter that other courts may lack. And while Datres may have been able to sue the German Defendants in Germany or perhaps Italy, it is much less clear that she could have sued Winfree and Heiselman for injuries that took place in the United States. Thus, not only was a court in Michigan a convenient place for Datres to bring her suit, it may have been the *most* convenient and indeed the *only* place where she could sue all Defendants simultaneously.

The Court concludes that while Datres's choice of forum may not be afforded maximum deference, it should still be awarded at least a moderate amount of deference. *Hefferan*, 828 F.3d at 494 (describing the deference analysis as a "sliding convenience scale"); *Associacao Brasileira*, 891 F.3d at 619 (same). Accordingly, Defendants must make a showing strong enough to overcome the moderate deference to Datres's choice. *Associacao Brasileira*, 891 F.3d at 619.

### 2. Adequate Alternate Forum

"An alternative forum is adequate when the defendant is amenable to process in another jurisdiction that may remedy the alleged harm." *Hefferan*, 828 F.3d at 494 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981)). Datres asserts differences in German jury procedure and discovery laws. But "[l]aw that is simply less favorable to the plaintiff in the alternative forum is not so extraordinary as to render that forum inadequate." *Id.* Indeed, in *Hefferan* itself, the Sixth Circuit found Germany to be an adequate alternate forum for claims sounding in personal injury and product liability. *Id.* at 492, 495-97.

Datres suggests German courts may decline to exercise jurisdiction over her claims because Defendants' alleged negligence and defective product caused injuries in the United States. The

11

Court does not have sufficient legal analysis or authority from either party to determine the legitimacy of Datres's concern. The overall burden is on Defendants, but on this point, Datres provides nothing more than speculation.

Following suit from other courts that have found Germany to be an adequate alternate forum and mindful of the rare cases in which an alternate forum has been found inadequate, the Court concludes that Germany presents an adequate alternate forum.

### 3. Burden on Public and Private Interests

"The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *Id.* at 498. Courts examine both private and public interest factors. "Private-interest factors include 'the relative ease of access to sources of proof; availability of compulsory process for attendance . . . and the cost of obtaining attendance of . . . witnesses; possibility of view of premises . . . ; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Public-interest factors include 'administrative difficulties . . . ; the local interest in having localized controversies decided at home; . . . having the trial . . . in a forum that is at home with the law . . . ; the avoidance of unnecessary problems in conflict of laws . . . ; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Id.* (quoting *Piper Aircraft*, 828 F.3d at 241 n.6).

Focusing on the wrong *forum non conveniens* analysis, Defendants do not present significant private or public interest factors militating against Datres's choice of forum. They merely argue that the public interest factors identified by Datres are insufficient to overcome the purported forum selection clause. They argue, "As a matter of public interest, Germany has an equal interest in regulating the conduct of its resident entities and individuals providing services within its borders, and preventing those service providers from causing harm to customers." (Defs.' Reply Br. in Supp. of Mot. to Reconsider 11, ECF No. 118.) But an "equal interest" is

12

insufficient to overcome Datres's choice of forum.  And the practical implications of this case—including two co-defendants whose separate criminal proceedings took place in this forum and who both now reside in domestic prisons—create strong private interest factors in favor of a Michigan forum.  With no greater public interest asserted and no private interests asserted, Defendants simply do not carry their burden to overcome Datres's choice of forum.

Because Defendants fail to show that a different conclusion must result from the *forum non conveniens* analysis, the Court will deny their motion for reconsideration.  The Court's denial of Defendants motion to dismiss for *forum non conveniens* stands.

## IV. ANCILLARY MATTERS

### A. Defendants' Request to Certify an Interlocutory Appeal

In their motion for reconsideration, Defendants requested in the alternative for the Court to certify for interlocutory appeal its denial of their motion to dismiss under *forum non conveniens*. Defendants presented this request should the Court have declined to reconsider the issue under standards allowing it to go beyond the pleadings.  Although the Court reaches the same conclusion it did previously, it has reviewed Defendants' motion to dismiss under the proper standard and has considered evidence beyond the pleadings, including the applicable TOS.  Because the Court has now analyzed the motion in full, it will decline to certify the issue for interlocutory appeal.  This issue is not close; there is not "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  And "it has long been 'settled that an order granting a transfer or denying a transfer is interlocutory and not appealable."  *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 655 (6th Cir. 2009) (quoting *Lemon v. Druffel*, 253 F.3d 680, 683 (6th Cir. 1958)) (refusing to hear an appeal of a denial of a motion to dismiss under *forum non conveniens*).

**B. Winfree's Motions**

Unrelated to Defendants' motion, Winfree moves to exclude evidence of his *nolo contendere* plea pursuant to Federal Rule of Evidence 410 and moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) "as [his] *nolo contendere* plea should not be allowed to be used against me in this civil suit." (Winfree's Mot. to Dismiss, ECF No. 106.)

Winfree is correct that Rule 410 prevents the admission of a *nolo contendere* plea in another case. Fed. R. Evid. 410(a)(2). However, his motion is premature. No party has attempted to admit his plea for purposes of determining his liability for this civil case. And whether Datres has sufficiently stated a claim against Winfree does not depend on Datres's ability to admit Winfree's plea. His Rule 12(b)(6) motion will be denied.

## V. CONCLUSION

The Court has reconsidered Multikultur and Bujara's motion to dismiss under *forum non conveniens*. Because the parties did not agree to a mandatory forum selection clause applicable to Datres's claims, the modified analysis under *Atlantic Marine* does not supplant the traditional analysis. Under the traditional analysis, Datres's choice of forum is awarded some deference, because Michigan is likely the most convenient choice for the specific facts of this case. Defendants do not carry their burden to overcome the deference afforded Datres's choice. They have thus failed to demonstrate that a different outcome must result, and the Court will therefore deny their motion for reconsideration.

Additionally, Winfree's motion to exclude evidence is premature, and his motion to dismiss under 12(b)(6) is meritless. Defendants Winfree, Heiselman, Multikultur, Bujara, and Agent Au Pair, Inc. all remain defendants to the case.

An order will enter consistent with this Opinion.

Dated: August 23, 2024                    /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE