UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSANNA DATRES,

    Plaintiff,

v.

ARISKNIGHT WINFREE, et al.,

    Defendants.

_____/

Case No. 1:23-cv-519

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Susanna Datres filed a second amended complaint (with a corrected caption) in this action on May 9, 2024 (ECF No. 104). She has since stipulated to the dismissal of Defendants Agent Au Pair, Inc., MultiKultur e.K., and Rafael Bujara. (ECF No. 144.) The only remaining defendants are Arisknight Winfree and Paul Heiselman.

On May 5, 2025, the Court issued an order to show cause directing Plaintiff to demonstrate why the Court should not dismiss the remaining claims for failure to prosecute. (ECF No. 186.) Plaintiff had not responded to four pending motions from Heiselman: a motion to strike (ECF No. 170), a motion to dismiss (ECF No. 174), a motion to stay (ECF No. 176), and a motion to clarify (ECF No. 180). Plaintiff filed a response to the order to show cause (ECF No. 187) concurrently with a response opposing the motion to strike (ECF No. 188), a response opposing the motion to clarify (ECF No. 189), and a request for an additional thirty days to respond to Heiselman's other pending motions.

For the reasons discussed herein, the Court will vacate the order to show cause; however, the Court will not accept Plaintiff's untimely responses to Heiselman's motions. Additionally, as

discussed below, the Court, having reviewed the pending motions, will deny Heiselman's motion to strike, grant in part and deny in part Heiselman's motion to dismiss, deny Heiselman's motion to stay, and deny Heiselman's motion to clarify.

## I. ORDER TO SHOW CAUSE

The Court issued a show cause order, noting that it may dismiss the case for lack of prosecution due to Plaintiff's failure to respond to Heiselman's four pending motions. Plaintiff's response to the order to show cause can best be described as her attorney providing excuses for a lack of diligence. Plaintiff's counsel claims that he was working with the FBI to secure and review documents, working towards a potential motion under Rule 56.[1] But this does not adequately explain why Plaintiff failed to respond to Heiselman's pending motions, particularly when the motions are based on the pleadings.

Additionally, Plaintiff requests that the Court accept responses to the motion to strike and the motion to clarify, filed concurrently with the response to the order to show cause. Plaintiff also requests an additional thirty days to respond to Heiselman's motion to dismiss and motion to stay. The Court construes this as a request made under Rule 6(b)(1)(B).

Plaintiff's request should have been made by motion. Fed. R. Civ. P. 6(b)(1)(B). It was not. However, even if Plaintiff filed such a motion, the Court would deny it. "After a deadline expires," the Court "may extend it 'for good cause . . . if the party failed to act because of excusable neglect.'" *C.S. v. McCrumb*, --- F.4th ---, No. 24-1364, 2025 WL 1276036, at *9 (6th Cir. May 2, 2025) (citing Fed. R. Civ. P. 6(b)(1)(B)). The Court considers five factors to determine excusable neglect: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was

---

[1] The deadline to file a dispositive motion was December 10, 2024.

2

within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *Id.* (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).

While there may not be danger of prejudice to the nonmoving party, and it remains unclear whether Plaintiff acted in good faith, the remaining factors all cut against Plaintiff. The length of delay is excessive; Plaintiff has already had a considerable amount of time to review and brief these motions. The responses for these motions were due no less than 70 days before she responded to the show cause order, more than double the typical 28-day timeline to respond to dispositive motions, and five-times the typical 14-day timeline for non-dispositive motions. Further, the request for an additional thirty days to respond to the motion to dismiss and the motion to stay would significantly impact judicial proceedings. The jury trial for this matter is scheduled for August 4, 2025. Heiselman would need to expend significant time and resources replying to Plaintiff's response, diverting him from efforts to prepare for trial. Plaintiff's reason for delay was merely prioritizing other matters, which is well within her and her counsel's control. If Plaintiff needed additional time, a request could have been made before the responses were due. Ignoring the Court's deadlines, only to seek an extension after the Court was left to wonder whether Plaintiff was continuing to prosecute the case, constitutes an affront to procedure, not good cause or excusable neglect. Thus, the Court will not accept the untimely responses to Heiselman's motions.

Nevertheless, the Court will vacate the show cause order. Plaintiff has demonstrated an intention to continue prosecuting the case.

## II. MOTION TO STRIKE

Heiselman filed a motion to strike paragraphs 6 and 153 from Plaintiff's second amended complaint. Under Rule 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing Fed. R. Civ. P. 12(f)).

"Motions to strike are viewed with disfavor and are not frequently granted." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).  Courts typically "do not strike portions of pleadings unless they are prejudicial to the moving party[] . . . or contain language that is extreme or offensive." *Harrison v. Am. Airlines, Inc.*, 760 F. Supp. 3d 545, 574 (M.D. Tenn. 2024) (collecting cases).  Allegations are "impertinent" or "immaterial" when they are "not relevant to the issues involved in the action." *L&L Gold Assocs., Inc. v. Am. Cash for Gold, LLC*, No. 09-10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009).  Allegations are "scandalous" when they "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that 'detracts from the dignity of the court.'" *Id.*  "To prevail on a motion to strike, the movant must clearly show that the challenged [material] 'has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant.'" *Id.* (quoting *First City Nat'l Bank & Trust Co. v. FDIC*, 730 F. Supp 501, 514 (E.D.N.Y. 1990)); *see also United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012) ("Although the disputed pleadings might offend the sensibilities of [the defendant], those pleadings are not scandalous because they are directly relevant to the controversy at issue and are minimally supported in the record." (cleaned up)).

Heiselman first seeks to strike paragraph 6 of the second amended complaint, which states: "Defendants AW and PAH are examples of the type of criminals, perverts, and predators who have taken advantage of the Website's lax vetting standards and oversight to trick, lure, and sexually exploit women seeking to better their lives through legitimate au pair matching arrangements." The complaint alleges that Defendants are among the group of criminals, perverts, and predators who intentionally use this website—due to its lax vetting standards—to conduct illegal activity. While Heiselman may take offense to his alleged association with this category of website patrons,

4

the paragraph is relevant to the controversy at issue, speaking to Defendants' intent in using a particular website to lure Plaintiff to the United States for the purpose of committing the alleged acts. Thus, the Court will not strike the paragraph.

Heiselman also seeks to strike paragraph 153 of the second amended complaint, which states: "The series of acts and conduct perpetrated by Defendants are universally condemned as cruel, inhuman, and degrading and actionable under the ATS. *Doe v. Qi*, 349 F. Supp. 2d 1258 (U.S. N.D. California, 2004)." The Court "need not accept any legal conclusion" in a complaint. *England v. DENSO Int'l Am. Inc.*, --- F.4th ---, No. 24-1360, 2025 WL 1300923, at *2 (6th Cir. May 6, 2025) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011)). However, the allegation remains pertinent to the claims against Defendants and their alleged violations under federal law, so the Court will not strike it.

Heiselman has not demonstrated the high bar necessary to strike allegations under Rule 12(f). Thus, his motion will be denied.

### III. MOTION TO DISMISS

Heiselman seeks dismissal under Rule 12(b)(1) and (b)(6).[2] Plaintiff's claims against Heiselman fall under Count IX (Trafficking Victims Protection Act), Count X (Alien Tort Claims Act or Alien Tort Statute), Count XI (Conspiracy to Commit Unlawful Acts), and Count XII (False Imprisonment).

---

[2] Heiselman also attempts to dismiss based on Rule 8 and Rule 10 grounds, but these arguments are unpersuasive if not frivolous. Dismissal on Rule 8 is reserved for when the complaint is so unclear that the defendant is not put on proper notice as to the general nature of the claims. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021). Heiselman demonstrated that he could decipher this complaint, so the Rule 8 standard is not satisfied. Further, Plaintiff makes a request for relief (2d Am. Compl. ¶¶ 211-12) and each paragraph in the second amended complaint is, as far as practicable, limited to a single set of circumstances, so dismissal under Rule 8(a)(3) and Rule 10 are, respectively, inappropriate. Additionally, Heiselman filed a supplement to his motion to dismiss. (ECF No. 183.) Much like Plaintiff, Heiselman did not show excusable neglect for the untimeliness (almost three months late) of this supplemental material or its lack of inclusion in his original motion, so the Court will not consider it.

The facts of the case have been discussed in detail in the Court's previous opinions.  (*See* 4/24/2024 Op. 2-6, ECF No. 100.)  As is relevant here, Plaintiff alleges that Heiselman "was aware and actively involved in [Winfree's] use of the Website and illegitimate search for an au pair (2d Am. Compl. ¶ 7), and that Heiselman knew Winfree "used the website AuPair.com to pose as a family seeking an au pair, even though Winfree had no need for an au pair." (*Id.* ¶ 69.)  Plaintiff also alleges that

> Winfree told [Heiselman] that he was going to use the website to entice women and girls to come to Winfree's house and that Winfree then intended to engage in sex acts with those women and girls.  Winfree told [Heiselman] about the fake listing, and he sought [Heiselman's] input on what language to use in it.  [Heiselman] knew Winfree used that fake listing to entice a girl with the initials S.D., identified in WDMI Case No. 1:23-CR-15, to come from Italy to Winfree's house to work as an au pair.  Winfree later tied S.D. up and sexually exploited her.  While S.D. was tied up, Winfree called [Heiselman] and told him as much.  During that conversation, Winfree indicated to [Heiselman] that Winfree intended to kill S.D. and hide her body to avoid prosecution.

(*Id.*)  The remaining allegations against Heiselman describe his aiding, abetting, and conspiring.  Plaintiff alleges that Heiselman "planned the language to be used on the platform to attract Susanna" to come to the United States under the guise of an au pair employment opportunity and "planned to kill her and dispose of her body." (*Id.* ¶ 158.)

### A. Subject Matter Jurisdiction

Heiselman argues that the Court should dismiss Plaintiff's claims due to a lack of subject matter jurisdiction.  Because Plaintiff has raised claims that arise under federal law (i.e. 18 U.S.C. § 1595), this Court has subject matter jurisdiction.  28 U.S.C. § 1331.

### B. Failure to State a Claim

Heiselman argues that Plaintiff fails to state a claim upon which relief may be granted.  A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### 1. Trafficking Victims Protection Act ("TVPA")

Plaintiff states a claim under the TVPA against Heiselman if she alleges that Heiselman "recruit[ed]" or "entice[d]" her, "knowing that means of force, threats of force, fraud, coercion, . . . or any combination of such means [would] be used to cause [her] to engage in a commercial sex act." 18 U.S.C. § 1591(a). In other words, if Plaintiff alleges that Heiselman recruited Plaintiff to engage in conduct, knowing that she would be subjected to force, fraud, or coercion that would cause her to engage in a commercial sex act, she has successfully stated a claim against Heiselman under the TVPA. The TVPA broadly defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." *Id.* § 1591(e)(3).

Plaintiff states a claim under the TVPA. Plaintiff alleges Heiselman helped create the language for the au pair posting that attracted Plaintiff to come to the United States, thereby

7

recruiting or enticing her. (2d Am. Compl. ¶ 158.) She also alleges that Heiselman knew that the fraudulent[3] au pair posting would be used to cause Plaintiff to engage in a commercial sex act, which includes nonconsensual sex stemming from promises of job opportunities, as was alleged here. *Doe v. Knight*, 624 F. Supp. 3d 857, 863 (E.D. Mich. 2022) ("[P]ledges of career advancement qualify as 'things of value' for the purposes of the TVPA, even if the promise is never actually fulfilled."); *see also, e.g.*, *David v. Weinstein Co.*, 431 F. Supp. 3d 290, 299-300 (S.D.N.Y. 2019) (collecting cases). Additionally, from Plaintiff's allegations about Heiselman's continued, informed involvement in Winfree's conduct, it is reasonable to infer that Heiselman also knew about the force, threats of force, and coercion that caused Plaintiff to engage in commercial sex acts. From each angle, Plaintiff has alleged facts that state a claim against Heiselman under the TVPA.

### 2. Alien Tort Statute ("ATS")

The ATS allows aliens to seek remedy in federal court for "violation[s] of the law of nations or a treaty of the United States," 28 U.S.C. § 1350, but it "is a jurisdictional statute creating no new causes of action." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). Its "jurisdictional grant is best read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time." *Id.*

"[A]t the time the ATS was enacted[,] only three actions were generally recognized as infractions of the law of nations: piracy, offenses against ambassadors, and violations of safe conducts." *Taveras v. Taveraz*, 477 F.3d 767, 776 (6th Cir. 2007) (citing *Sosa*, 542 U.S. at 725).

---

[3] Even if this claim is subjected to the heightened pleading standard of Rule 9(b), in which the Plaintiff must "specify the 'who, what, when, where, and how' of the alleged fraud," *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024), Plaintiff has satisfied it, alleging the exact post that was fraudulent and explaining that Heiselman knew the true purpose behind the intentionally misleading post. (2d. Am. Compl. ¶ 69.)

These "traditional law of nations violations" serve as the foundation of ATS jurisdiction. *Id.* And while ATS jurisdiction remains narrow, there exists a path for additional causes of action. *Sosa*, 542 U.S. at 729 ("[T]he door is still ajar subject to vigilant doorkeeping . . . ."). "[O]ther causes of action based upon present-day law of nations may be cognizable under the ATS if the claim both 'rests on a norm of international character accepted by the civilized world and is defined with a specificity comparable to the features of the aforementioned 18th-century paradigms.'" *Taveras*, 477 F.3d at 772 (cleaned up) (quoting *Sosa*, 542 U.S. at 725).

Plaintiff asserts her ATS cause of action not in the traditional law of nations violations,[4] but in "the universally-recognized and protected rights of association, freedom, speech, and privacy." (2d Am. Compl. ¶ 150.) These rights are not defined with the proper specificity to survive the test established in *Sosa*. Piracy, offenses against ambassadors, and violations of safe conducts are not broad rights; they are specific violations limited to certain contexts (i.e. piracy limited to conduct upon the high seas), certain people (i.e. ambassadors), or certain permissions (i.e. safe conducts applies to a specific grant of affirmative protection that was validly obtained). *Taveras*, 477 F.3d 772-75, 781-82. Plaintiff asserts generalized rights with boundaries that extend beyond the intended limited scope of specific law-of-nations violations. *See Sosa*, 542 U.S. at 736-37 (rejecting ATS cause of action for rights described without specificity).

But even if Plaintiff framed Heiselman's precise conduct as a law-of-nations violation, she has not established that Heiselman's conduct violates either binding or customary international

---

[4] This is certainly not a violation grounded in piracy (as there was no mention of an offense "upon the high seas," *Taveras*, 477 F.3d at 772 n.2) nor an offense against an ambassador. And the second amended complaint indicates Plaintiff did not obtain the proper visa to enter the United States for her intended purpose (2d Am. Compl. ¶¶ 41-42, 47), which is a necessary condition to seek relief under a safe-conducts law-of-nations violation. *Id.* at 772-75 (explaining that the safe conducts doctrine applies to aliens who have been granted an affirmative privilege of protection via "a valid visa" (quoting Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 874 (2006))).

9

law, as is required to state a claim under the ATS. *See id.* at 734-35 (explaining that unless international law "create[d] obligations enforceable in the federal courts," or the rights asserted "attained the status of binding customary international law," there is no ATS cause of action under present-day norms).

She first cites G.A. Res. 55/25, Protocol to Prevent, Suppress and Punish Trafficking in Persons, art. 5 (Nov. 15, 2000), also known as the "Palermo Protocol." While this international agreement instructs signing-States to establish criminal offences for human trafficking, *id.* art. 5, it "supplements the United Nations Convention Against Transnational Organized Crime" and "shall be interpreted together with the Convention." *Id.* art. 1. To that end, this Protocol applies "where those offences are transnational in nature *and involve an organized criminal group*." *Id.* art 4 (emphasis added). An "organized criminal group" is defined as "a structured group of three or more persons, existing for a period of time and acting in concert with the aim of committing one or more serious crimes or offenses established in accordance with this Convention." G.A. Res. 55/25, United Nations Convention Against Transnational Organized Crime, art. 2(a) (Nov. 15, 2000). The Palermo Protocol identified as harmful—and sought international cooperation to address—a specific type of conduct: trafficking at the hands of organized criminal groups.

To determine whether an ATS cause of action exists, courts should not look beyond the specific conduct identified in an international agreement. For example, in *Taveras*, the plaintiff cited the Hague Convention as a source illustrating the international community's condemnation of cross-border child removals. *Taveras*, 477 F.3d at 777. However, as the Court of Appeals held, because the Hague Convention only targets cross-border removals that violate custody rights, the ATS does not provide a cause of action for a cross-border removal that violated other laws. *Id.* at 777-78. In doing so, the Court of Appeals established that when courts look at an international

10

agreement to determine a potential ATS cause of action, they should look no further than the specific harm the international agreement identifies. *See id.* This approach is consistent with the essential charge of "vigilant doorkeeping" against new ATS causes of action, a restraint that prevents unnecessary encroachment into a primarily legislative responsibility and reaffirms the judiciary's deference to the legislative and executive branches in matters of foreign affairs. *Sosa*, 542 U.S. at 725-29. Courts should not engage in "judicial creativity" to declare a law-of-nations violation. *Id.* at 728. Plaintiff does not allege the involvement of an organized criminal group (and only brought this claim against two individuals: Winfree and Heiselman), so the Palermo Protocol does not establish a present-day law-of-nations violation for the alleged conduct.

Further, the text of the Palermo Protocol is explicit in declaring that "[n]othing in this Protocol shall affect the rights, obligations and responsibilities of States and individuals under international law . . . ." Palermo Protocol art. 14. Because the Palermo Protocol "does not of its own force impose obligations as a matter of international law," *Sosa*, 542 U.S. at 734, and it does not condemn the specific conduct Plaintiff alleges, it does not reflect obligations enforceable on our domestic courts nor binding customary international law. Thus, based on the allegations in the second amended complaint, the Palermo Protocol does not provide a present-day law-of-nations violation for Plaintiff to state a claim under the ATS.

The other sources Plaintiff cites fare no better. Plaintiff cites the Universal Declaration of Human Rights, the Convention Concerning Force or Compulsory Labour, the American Convention on Human Rights, and the Declaration of the Elimination of Violence Against Women, which amount to general definitions of rights that signatories support, but they do not bestow any binding obligations on parties. Thus, there is no basis for an ATS cause of action embedded in these international agreements.

11

While "[t]he ATS holds great potential to bring justice to certain serious violations of human, civil, and environmental rights in a federal forum[,] . . . [the statute] by no means[] supplies jurisdiction over every wrong committed against an alien." *Taveras*, 477 F.3d at 771. Because Plaintiff has failed to allege facts that support a cause of action under the ATS, her ATS claim against Heiselman will be dismissed.

### 3. False Imprisonment

"The elements of false imprisonment are '(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the confined is conscious of [her] confinement.'" *Moore v. City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2002) (quoting *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 468 (Mich. 1993)). As indicated above, Plaintiff alleges facts from which it is reasonable to infer that Heiselman was apprised of Winfree's plan from the beginning. Heiselman helped draft the language with the intent to bring Plaintiff to the United States where she would be held against her will. This act indirectly resulted in her confinement, and Plaintiff was conscious of her confinement as she was physically tied up and unable to leave various rooms and/or the house. Her confinement was not momentary and fleeting, and there was no proper authority to support her nonconsensual confinement. *See id.* Plaintiff alleges facts that state a claim for false imprisonment.

### 4. Civil Conspiracy

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Jackson v. Southfield Neighborhood Revitalization Initiative*, 18 N.W.3d 27, 60 (Mich. Ct. App. 2023) (quoting *Advoc. Org. for Patients & Providers v. Auto. Club Ins. Ass'n*, 670 N.W.2d 569, 581 (2003)). To raise a claim for civil conspiracy, "it is necessary to prove a separate, actionable tort." *Id.* (quoting *Advoc. Org. for Patients & Providers*, 670 N.W.2d at 581).

Plaintiff properly alleges facts that establish Heiselman worked with Winfree—through the concerted effort to lure Plaintiff to the United States via the au pair posting—to accomplish the tort of false imprisonment (as discussed above). Thus, she has stated a claim for civil conspiracy against Heiselman.

* * *

Plaintiff alleges facts that properly state a claim for TVPA violations, false imprisonment, and civil conspiracy against Heiselman. Plaintiff has failed to state a claim under the ATS, so the ATS claim will be dismissed.

### IV. MOTION TO STAY

Heiselman filed a motion to stay the proceedings, but it operates as an objection to the magistrate judge's order placing privacy restrictions on certain confidential information in this matter (ECF No. 149). As Heiselman concedes, he does not object to the substance of the order. He merely seeks to ensure his access to documents. The magistrate judge's order explains that Heiselman will have access to the documents (he is his own counsel of record) subject to the order's general restrictions on the usage of confidential information. Because Heiselman presents no basis for a stay, and the Court finds no improprieties with magistrate judge's order, his motion will be denied.

Heiselman submitted a supplement to this motion that, given his pro se status, the Court will consider timely. Unlike his supplement to the motion to dismiss, which was nearly three months late, this supplement was filed shortly after the motion to stay. In this supplement, Heiselman claims he should have been entitled to an initial conference under Rule 16, and he asserts that Plaintiff has not complied with the disclosure requirements under Rule 26. Per Rule 16 and the Court's Local Rule 16.1, the early scheduling conference is discretionary; Heiselman is not entitled to such a conference, and the Court issued the required scheduling order.

Additionally, Heiselman was joined as a party later in the litigation, when Plaintiff filed her second amended complaint. The Court need not order additional conferences for each joined party.

As for his contention that Plaintiff has not complied with Rule 26, Heiselman has not satisfied the requirements of Rule 37. Thus, the Court will not entertain his assertion regarding disclosures at this time.

## V. MOTION TO CLARIFY

Heiselman filed a motion for clarification of the Court's previous order. The order in question directed Plaintiff to file a motion for leave to file an amended complaint (ECF No. 80). Heiselman's motion seeks clarification on the word "alternative" as it was used in the order. The Court may not give legal advice to parties; it may only provide clarification of its orders. *United States v. Riley*, 609 F. App'x 837, 841 n.2 (6th Cir. 2015). The order directed Plaintiff to file a motion for leave to file an amended complaint. No elaboration on the term "alternative" is required; his motion will be denied.

## VI. CONCLUSION

Heiselman filed four motions that are before the Court. Plaintiff failed to respond to any of them and did not show excusable neglect, so her untimely responses will not be accepted. However, she did demonstrate that she is prosecuting the case, so the Court will vacate the order to show cause.

Heiselman's motion to strike will be denied because he did not meet the high bar necessary to strike allegations under Rule 12(f). Heiselman's motion to dismiss will be granted in part and denied in part; Plaintiff's claim against Heiselman under the ATS will be dismissed, but her claims under the TVPS, false imprisonment, and civil conspiracy theories of liability will remain. Heiselman's motions to stay and clarify will also be denied.

An order consistent with this opinion will issue.

Dated: May 20, 2025                    /s/ Hala Y. Jarbou
                                       HALA Y. JARBOU
                                       CHIEF UNITED STATES DISTRICT JUDGE